# JANIS LAW GROUP

**A PROFESSIONAL CORPORATION**

Dean T. Janis (CSB 144791)
550 West C Street, Suite 2000
San Diego, CA 92101
Telephone:  619.814.3525
Facsimile:   619.955.5318

Attorneys for Plaintiffs
Robert Albergo and David Irwin

FILED

2009 NOV 24  PM 1: 36

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'09 CV 2653 DMS AJB

| | |
|---|---|
| ROBERT ALBERGO, an individual, and DAVID IRWIN, an individual, <br><br>        Plaintiffs, <br><br>    v. <br><br> IMMUNOSYN CORPORATION, a Delaware corporation, ARGYLL BIOTECHNOLOGIES, LLC, a Texas limited liability company, JAMES T. MICELI, an individual, DOUGLAS A. MCCLAIN, JR., an individual, ARGYLL EQUITIES, LLC, a Texas limited liability company, STEPHEN FERRONE, an individual, DOUGLAS A. MCCLAIN, SR., an individual, THOMAS ROAD COMPANY, and DONA MICELI, an individual, <br><br>        Defendants. | CASE NO. <br><br> **COMPLAINT FOR:** <br> 1) **VIOLATION OF SECURITIES EXCHANGE ACT;** <br> 2) **FRAUD AND FRAUD IN THE INDUCEMENT;** <br> 3) **BREACH OF CONTRACT;** <br> 4) **VIOLATION OF RICO;** <br> 5) **CONSPIRACY TO VIOLATE RICO;** <br> 6) **CIVIL CONSPIRACY;** <br> 7) **UNJUST ENRICHMENT; AND** <br> 8) **FRAUDULENT CONVEYANCE** |

Now come plaintiffs ROBERT ALBERGO and DAVID IRWIN (collectively, "PLAINTIFFS") and for their complaint against IMMUNOSYN CORPORATION, ARGYLL BIOTECHNOLOGIES, LLC, JAMES T. MICELI, DOUGLAS A. MCCLAIN, JR., ARGYLL EQUITIES, LLC, STEPHEN FERRONE, DOUGLAS A. MCCLAIN, SR., THOMAS ROAD COMPANY, and DONA MICELI (collectively, "DEFENDANTS") state as follows:

JANIS LAW GROUP, APC

COMPLAINT

**Parties**

1.         Plaintiff, Dr. Robert Albergo ("ALBERGO"), is a resident of Florida.

2.         Plaintiff, David Irwin ("IRWIN"), is a resident of Florida.

3.         Defendant, Immunosyn Corporation ("IMMUNOSYN"), is a Delaware corporation with its principal place of business at 10815 Rancho Bernado Road, Suite 101, San Diego, California.

4.         Defendant, Argyll Biotechnologies, LLC ("ARGYLL BIOTECH"), is a Texas limited liability company with its principal place of business at 10815 Rancho Bernado Road, Suite 101, San Diego, California.

5.         Defendant, Argyll Equities, LLC ("ARGYLL EQUITIES"), is a Texas limited liability company, with its principal place of business at 10815 Rancho Bernardo Road, Suite 101, San Diego, California.

6.         Defendant, James T. Miceli ("MICELI"), is a resident of California. MICELI is the Chief Executive Officer of ARGYLL BIOTECH and ARGYLL EQUITIES.

7.         Defendant, Douglas A. McClain, Jr. ("MCCLAIN, JR."), is a resident of Georgia. MCCLAIN is the President of ARGYLL BIOTECH and ARGYLL EQUITIES and the Chief Financial Officer of IMMUNOSYN.

8.         Defendant, Stephen Ferrone ("FERRONE"), is a resident of California. FERRONE is the President of IMMUNOSYN.

9.         Defendant, Douglas A. McClain, Sr. ("MCCLAIN SR."), is a resident of Texas. MCCLAIN SR. is an owner and/or controlling person with respect to ARGYLL EQUITIES and/or ARGYLL BIOTECH and holds himself out to be ARGYLL BIOTECH's Chief Science Officer.

10.       Defendant, Thomas Road Company ("THOMAS ROAD CO."), is a shell company, wholly owned and controlled by James T. Miceli.

11.       Defendant, Dona Miceli ("DONA MICELI), is a resident of California and the wife of James T. Miceli.

COMPLAINT

1                                **Jurisdiction and Venue**

2          12.     This action is brought personally by PLAINTIFFS pursuant to the Securities

3 Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m, 78r and 78t, and RICO statute 18

4 U.S.C. § 1964 *et seq.* Jurisdiction of this court and venue in this district are proper pursuant to

5 15 U.S.C. § 78aa and 18 U.S.C. § 1964 *et seq.* Further, jurisdiction is conferred under 15 U.S.C.

6 § 1332(a)(1) because PLAINTIFFS and DEFENDANTS are citizens of different states and the

7 amount in controversy exceeds $75,000 in damages.

8                                   **Governing Law**

9          13.     Pursuant to 15 U.S.C. § 78m, IMMUNYSON and its principals are required to

10 maintain public filings and books and records for the benefit of investors that accurately and

11 fairly reflect the transactions and dispositions of the assets of the issuer and maintain financial

12 records that conform with generally accepted accounting principles.

13          14.     Pursuant to 15 U.S.C. § 78r (a), "Any person who shall make or cause to be made

14 any statement in any application, report, or document filed pursuant to this chapter or any rule or

15 regulation thereunder or any undertaking contained in a registration statement as provided in

16 subsection (d) of section 78o of this title, which statement was at the time and in the light of the

17 circumstances under which it was made false or misleading with respect to any material fact,

18 shall be liable to any person (not knowing that such statement was false or misleading) who, in

19 reliance upon such statement, shall have purchased or sold a security at a price which was

20 affected by such statement, for damages caused by such reliance, unless the person sued shall

21 prove that he acted in good faith and had no knowledge that such statement was false or

22 misleading. A person seeking to enforce such liability may sue at law or in equity in any court of

23 competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking

24 for the payment of the costs of such suit, and assess reasonable costs, including reasonable

25 attorneys' fees, against either party litigant."

26          15.     Pursuant to 15 U.S.C. § 78t (a) and (b), "Every person who, directly or indirectly,

27 controls any person liable under any provision of this chapter or of any rule or regulation

28                                       3

1   thereunder shall also be liable jointly and severally with and to the same extent as such

2   controlled person to any person to whom such controlled person is liable, unless the controlling

3   person acted in good faith and did not directly or indirectly induce the act or acts constituting the

4   violation or cause of action." "It shall be unlawful for any person, directly or indirectly, to do

5   any act or thing which it would be unlawful for such person to do under the provisions of this

6   chapter or any rule or regulation thereunder through or by means of any other person."

7        16.   Pursuant to 17 C.F.R. § 240.10b-5, "It shall be unlawful for any person, directly

8   or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails

9   or of any facility of any national securities exchange, (a) To employ any device, scheme, or

10   artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a

11   material fact necessary in order to make the statements made, in the light of the circumstances

12   under which they were made, not misleading, or (c) To engage in any act, practice, or course of

13   business which operates or would operate as a fraud or deceit upon any person, in connection

14   with the purchase or sale of any security.

15        17.   Pursuant to 18 U.S.C. § 1964 (c) Any person injured in his business or property

16   by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate

17   United States district court and shall recover threefold the damages he sustains and the cost of

18   the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct

19   that would have been actionable as fraud in the purchase or sale of securities to establish a

20   violation of section 1962.

21        18.   Pursuant to 18 U.S.C. § 1962 **(a)** It shall be unlawful for any person who has

22   received any income derived, directly or indirectly, from a pattern of racketeering activity or

23   through collection of an unlawful debt in which such person has participated as a principal

24   within the meaning of section 2, title 18, United States Code, to use or invest, directly or

25   indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest

26   in, or the establishment or operation of, any enterprise which is engaged in, or the activities of

27   which affect, interstate or foreign commerce.  Pursuant to 18 U.S.C. § 1962 **(c)** It shall be .

28

4

COMPLAINT

1   unlawful for any person employed by or associated with any enterprise engaged in, or the

2   activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

3   indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or

4   collection of unlawful debt.  Racketeering is defined by Section 1961 and includes mail fraud.

5                                         **Background**

6          19.    · MICELI, MCCLAIN, SR., and MCCLAIN. JR. control ARGYLL EQUITIES,

7   ARGYLL BIOTECH and IMMUNOSYN.

8          20.    MICELI, MCCLAIN, SR., and MCCLAIN, JR. have been personally involved in

9   the distribution of a drug known as SF-1019 throughout the United States.

10         21.    MICELI, MCCLAIN, SR., and MCCLAIN, JR. have been personally involved in

11  the retention of profits from the sale of SF-1019.

12         22.    MICELI, MCCLAIN, SR., and MCCLAIN, JR. have been personally involved in

13  the development of media statements and promotional statements made on their companies'

14  websites concerning SF-1019.

15         23.    MICELI, MCCLAIN, SR., and MCCLAIN, JR. are the alter egos of ARGYLL

16  EQUITIES and ARGYLL BIOTECH.

17         24.    ARGYLL EQUITIES financed the start up of ARGYLL BIOTECH.

18         25.    ARGYLL BIOTECH and/or ARGYLL EQUITIES financed the start up of

19  IMMUNOSYN and financially control IMMUNOSYN.

20         26.    ARGYLL BIOTECH claims to own, develop and promote SF-1019.

21         27.    IMMUNOSYN claims in its SEC filings and website to own the exclusive rights

22  to market and sell SF-1019.

23         28.    In early 2006, ALBERGO was introduced by Dr. Jochen Brenner to MICELI and

24  MCCLAIN, SR.

25         29.    In early 2006, through a series of telephone calls and mailings between MICELI

26  and/or MCCLAIN, SR. on the one hand, and ALBERGO on the other hand, ALBERGO was

27  convinced by MICELI and MCCLAIN, SR. that he should make a financial investment in a start-

28

                                              5

1   up company, now known as IMMUNOSYN, because IMMUNOSYN had an exclusive right to

2   sell a super drug called SF-1019.

3         30.    During these initial telephone calls with ALBERGO related to the efficacy of SF-

4   1019, MCCLAIN, SR. held himself out to be the Chief Science Officer of ARGYLL BIOTECH

5   and a medical doctor trained in England.

6         31.    MCCLAIN, SR. and MICELI told ALBERGO that IMMUNOSYN was the next

7   Google and that SF-1019 cured multiple sclerosis and diabetic skin ulcers.

8         32.    MCCLAIN, SR. and MICELI told ALBERGO that they had studies to

9   conclusively prove the effectiveness of SF-1019, but that the studies were not yet ready for

10   publication.

11         33.    MCCLAIN, SR. and MICELI told ALBERGO that SF-1019 had no side effects

12   and that it was totally safe.

13         34.    MCCLAIN, SR. and MICELI told ALBERGO that the money they wanted him to

14   invest would be used to fund the start-up operations.

15         35.    MCCLAIN, SR. and MICELI told ALBERGO that IMMUNOSYN would

16   definitely be listed on the NASDAQ shortly after its public offering.

17         36.    MCCLAIN, SR. and MICELI told ALBERGO that an Osmond family member

18   had invested millions of dollars in IMMUNOSYN and that one of the Osmond brothers' multiple

19   sclerosis was dramatically improved by taking SF-1019.

20         37.    MCCLAIN, SR. also claimed to ALBERGO that studies had been completed in

21   Utah and Mexico on SF-1019 with "unbelievable success."

22         38.    MCCLAIN, SR. and MICELI told ALBERGO that SF-1019 would be given

23   orphan status because of its effectiveness and that such would lead to expedited FDA approval.

24         39.    MCCLAIN, SR. also claimed that SF-1019 was going to be approved in Malaysia

25   in the short term.

26         40.    MCCLAIN, SR. and MICELI told ALBERGO that he would receive stock

27   certificates in the start-up company shortly after making his investment.

28

6

41.     Prior to making his purchase, MCCLAIN, SR. and MICELI told ALBERGO that he could buy the stock at $10/share, but that the opening price of the stock would be $15.50/share.

42.     On or about March 2006, relying upon the representations of MICELI and MCCLAIN, SR., ALBERGO paid $1,000,000 to ARGYLL EQUITIES for stock in a company now known as IMMUNOSYN.

43.     In early 2006, Dr. Jochen Brenner represented to IRWIN that he was selling stock in the company to be known as IMMUNOSYN.

44.     Based upon representations by Dr. Brenner that IMMUNOSYN had exclusive rights to make and sell a new drug that cured severe cases of diabetes, statistical studies and doctor's recommendations presented by Dr. Brenner to IRWIN, the imminent nature of the success of IMMUNOSYN as represented to IRWIN by Dr. Brenner, and the representation that the stock could be bought for $10/share but would go public for $15.50/share, IRWIN purchased $25,000 worth of IMMUNOSYN stock from ARGYLL EQUITIES.

45.     Prior to IRWIN's purchase, Dr. Brenner represented to IRWIN that the company now known as IMMUNOSYN would obtain approval for the sale of SF-1019 in the United States in 1 to 2 weeks and that the stock would be trading in the same time frame.

46.     MCCLAIN, SR. and MICELI have used Dr. Brenner as an agent to promote and sell IMMUNOSYN stock.

47.     Dr. Brenner disclosed to IRWIN that he was selling stock for ARGYLL EQUITIES and that the information he was providing to IRWIN came from MCCLAIN, SR. and MICELLI.

48.     On or about April 2006, relying upon the representations of Dr. Brenner, IRWIN paid $25,000 to ARGYLL EQUITIES for stock in a company now known as IMMUNOSYN.

49.     From March-April 2006 through to the present, MCCLAIN, SR. has continued to promote SF-1019, claiming its imminent success and that the stock is about to "take off."

\ \ \

7

COMPLAINT

1       50.    On March 26, 2007, prior to the receipt of the stock certificates by IRWIN and

2    ALBERGO, Dr. Brenner represented to IRWIN and ALBERGO, based upon information

3    supplied by MCCLAIN, SR. and MICELI, that SF-1019 was approved for sale in Canada and

4    that orders had been received for 130,000 vials per month at $200.00/vial and that the stock

5    would be cleared for trading on April 3, 2007.

6       51.    On or about May 7, 2007, IRWIN and ALBERGO received a letter from MICELI

7    enclosing copies of the long promised stock certificates for the purchases made in 2006.  The

8    May 7, 2007 letter required that IRWIN and ALBERGO sign a Stock Purchase Agreement to

9    receive their original certificates (the "Stock Purchase Agreements").

10       52.    Based upon the representations *supra*, the repeated representations as to the

11    imminent success of IMMUNOSYN and the efficacy of SF-1019, and given the requirement that

12    they sign the Stock Purchase Agreements to receive their original stock certificates that had been

13    paid for approximately a full year prior, IRWIN and ALBERGO executed the Stock Purchase

14    Agreements.

15       53.    Upon information and belief, one or more of the DEFENDANTS are selling SF-

16    1019 in the United States and/or Mexico.

17       54.    Upon information and belief, one or more of the DEFENDANTS are distributing

18    SF-1019 in the United States and/or Mexico.

19       55.    Upon information and belief, Alan Osmond is paid by one or more of the

20    DEFENDANTS to promote SF-1019.

21       56.    IMMUNOSYN claims in its SEC filings, signed by FERRONE and MCCLAIN,

22    JR., to have an exclusive worldwide license to market and sell SF-1019.

23       57.    ALBERGO relied upon the aforementioned representations made by MICELI and

24    MCCLAIN, SR. in purchasing IMMUNOSYN stock from them and/or their company, ARGYLL

25    EQUITIES.

26       58.    IRWIN relied upon the aforementioned representations made by Dr. Brenner in

27    purchasing IMMUNOSYN stock from ARGYLL EQUITIES.

28

JANIS LAW GROUP,
APC    COMPLAINT

59.    ALBERGO and IRWIN continued to hold their IMMUNOSYN stock and never attempted to sell it because of the continuing representations by MCCLAIN, SR. and MICELI after the purchase of said stock and because of the representations made on IMMUNOSYN's website and ARGYLL BIOTECH's website.

60.    Recently, MICELI represented to ALBERGO, IRWIN and others that a New York law firm was involved in the imminent purchase of IMMUNOSYN stock for $20/share (the "Buyout").

61.    Separately, IMMUNOSYN reported that the Buyout was unsubstantiated market rumors.

62.    MICELI was personally involved in creating market rumors concerning a Buyout for his own financial gain and to cause ALBERGO, IRWIN and others to continue to hold their IMMUNOSYN stock and to delay legal action against him.

63.    IMMUNOSYN has reported no revenue for 2007 and 2008.  IMMUNOSYN's 10-Q dated May 15, 2008 claims, "As of the date of this report, we have no revenue and limited operations." This 10-Q is signed by MCCLAIN and FERRONE.

64.    SF-1019 has been sold for a profit in the United States during at least 2008.

65.    The DEFENDANTS have been selling SF-1019 through various commercial channels, including Dr. Morales in Texas, and the DEFENDANTS have failed to report and/or allocate income to IMMUNOSYN to the detriment of its stockholders, including PLAINTIFFS, in violation of IMMUNOSYN's exclusive right to market and sell SF-1019.

66.    The SEC filings made by IMMUNOSYN, as reported and/or signed by MCCLAIN and FERRONE, have been false and/or misleading because SF-1019 is being sold by the DEFENDANTS.

## COUNT I – THE EXCHANGE ACT

(Against MICELI, MCCLAIN, SR., MCCLAIN, JR., IMMUNOSYN, and FERRONE)

67.    PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-66 as if fully stated herein.

JANIS LAW GROUP, APC    COMPLAINT

1    68.    The DEFENDANTS are in violation of 15 U.S.C. § 78r and/or 17 C.F.R. §

2  240.10b-5 by making false and/or misleading statements concerning IMMUNYSON and SF-

3  1019 in SEC filings, including but not limited to: a) failing to report income generated from the

4  sale of SF-1019, b) claiming in SEC filings made January 3, 2007 that IMMUNYSON had the

5  "exclusive worldwide license to market, distribute and sell . . . SF-1019," and c) failing to

6  disclose that SF-1019 was being sold through channels outside of IMMUNYSON.

7    69.    ALBERGO and IRWIN relied upon the SEC filings of IMMUNOSYN to

8  accurately report the financials of the company, material events, and the assets/licenses held by

9  IMMUNOSYN.

10    70.    Based upon *supra* and MCCLAIN, SR. and MICELI's claim that IMMUNOSYN

11  would hold the exclusive license to sell SF-1019, ALBERGO and IRWIN purchased

12  IMMUNOSYN stock from them and/or ARGYLL EQUITIES.

13    71.    Based upon the SEC filings and DEFENDANTS' representations, ALBERGO

14  and IRWIN believed that SF-1019 could only be sold by IMMUNOSYN and that proceeds from

15  the sale of SF-1019 would flow to IMMUNOSYN.

16    72.    Based upon the SEC filings and MCCLAIN, SR.'s continuing representations as

17  to the efficacy of SF-1019, ALBERGO and IRWIN continued to hold their stock and not attempt

18  to sell it.

19    73.    In 2006, when MICELI and MCCLAIN, SR. were attempting to sell

20  IMMUNOSYN stock to ALBERGO and to IRWIN, through Dr. Brenner, neither of them told

21  ALBERGO or IRWIN that the stock would be restricted stock.

22    74.    The stock certificates finally sent to IRWIN and ALBERGO are restricted stock,

23  preventing the sale of said stock under certain conditions.

24    75.    One or more of the DEFENDANTS are selling SF-1019 without any proceeds

25  flowing to IMMUNYSON.

26    76.    MICELI, MCCLAIN, SR., MCCLAIN, JR. and FERRONE are jointly and

27  severally liable for the aforementioned unlawful conduct committed personally or through their

28

10

1    control of others.

2        77.    At this time, IMMUNSOYN stock is trading for around $0.20 per share.  The

3    volume being traded would not support the sale of a large volume of shares without further

4    depressing the price.  The stock purchased by ALBERGO and IRWIN is essentially worthless.

5        78.    ALBERGO has suffered $1 million in damages and IRWIN has suffered $25,000

6    in damages as a result of the DEFENDANTS' violations of the Exchange Act.

7        79.    ALBERGO and IRWIN are entitled to compensatory damages in amount to be

8    proven at trial against MICELI, MCCLAIN, SR., MCCLAIN, JR., IMMUNOSYN, and

9    FERRONE, jointly and severally, for their violations of the Exchange Act, plus interest, costs

10   and attorneys fees.

11                    **COUNT II – FRAUD AND FRAUD IN THE INDUCEMENT**

12                    (Against MICELI, MCCLAIN, SR. and ARGYLL EQUITIES, LLC)

13       80.    PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-79

14   as if fully stated herein.

15       81.    In violation of common law or statute, MICELI, MCCLAIN, SR., Dr. Brenner ,

16   and through them ARGYLL EQUITIES, LLC, made a number of representations to ALBERGO

17   and IRWIN, *supra* at paragraphs 26 through 66, in order to induce them to purchase

18   IMMUNOSYN stock.

19       82.    The representations made by MICELI, Dr. Brenner, and/or MCCLAIN, SR. at

20   paragraphs 26 through 66, were false and/or misleading and MICELI and MCCLAIN, SR. knew

21   said statements were false or misleading when made, because: 1) MCCLAIN, SR. is not a

22   medical doctor, 2) it is not proven that SF-1019 cures multiple sclerosis and diabetic skin ulcers,

23   3) when stated, no studies existed to conclusively prove the effectiveness of SF-1019, 4)

24   IMMUNOSYN was never listed on the NASDAQ, 5) no Osmond family member invested

25   millions in IMMUNOSYN, 6) SF-1019 was sold outside of IMMUNOSYN's exclusive license,

26   7) the money paid by ALBERGO was not used for IMMUNOSYN's start-up operations, 8)

27   when stated, there was no proof that SF-1019 had no side effects and that it was totally safe, 9)

28

11

1   SF-1019 has not achieved orphan drug status or FDA approval, 10) SF-1019 has not been

2   approved for sale anywhere in the world, 11) no order was placed for 130,000 vials of SF-1019

3   per month at $200/vial; 12) the stock opened for trading at $15.00 per share and closed at $9 per

4   share on the opening day; 13) the stock price was being manipulated and inflated by MICELI

5   and MCCLAIN, SR.; and 14) the stock was not cleared for trading on April 3, 2007.

6        83.    The truth behind the representations made by MICELI, Dr. Brenner and

7   MCCLAIN, SR. was concealed from PLAINTIFFS and such concealment and lack of

8   knowledge by PLAINTIFFS should toll the statute of limitations with respect to said claims of

9   fraud and fraudulent inducement.

10       84.    If PLAINTIFFS had not been provided with false and/or misleading information

11  by MICELI and/or MCCLAIN, SR., they would not have purchased IMMUNOSYN stock from

12  them and/or their company, ARGYLL EQUITIES.

13       85.    ALBERGO reasonably relied upon the DEFENDANTS' material representations

14  in purchasing and continuing to hold IMMUNOSYN stock.

15       86.    As a result of the purchase of stock in IMMUNYSON, ALBERGO has suffered

16  damages in excess of $1 million.

17       87.    IRWIN reasonably relied upon the material representations of Dr. Brenner, all of

18  which proved to be false, in purchasing IMMUNOSYN stock.

19       88.    MICELI and MCCLAIN, SR. knowingly communicated false or misleading

20  information to IRWIN and ALBERGO through Dr. Brenner to induce them to purchase

21  IMMUNOSYN stock.

22       89.    As a result of the purchase of stock in IMMUNYSON, IRWIN suffered damages.

23  in excess of $25,000.

24       90.    ALBERGO and IRWIN are entitled to rescission of the First Argyll Contracts and

25  Second Argyll Contracts and restitution of monies paid under said agreements, damages for

26  fraud, including direct, consequential and punitive damages, plus interest, costs and attorneys

27  fees.

28

JANIS LAW GROUP,
APC              COMPLAINT

91.     The conduct of MICELI and MCCLAIN, SR., as alleged above, was oppressive, fraudulent and malicious and was committed willfully and/or with reckless disregard for the rights of PLAINTIFFS, and without just cause or excuse.  Accordingly, PLAINTIFFS are entitled to exemplary damages in an amount to be determined at trial.

## COUNT III – BREACH OF CONTRACT

### (Against ARGYLL EQUITIES, LLC, MICELI and MCCLAIN, SR.)

92.     PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-91 as if fully stated herein.

93.     Based upon the false representations *supra*, PLAINTIFFS entered into an agreement to purchase stock from ARGYLL EQUITIES in a company now known as IMMUNSOYN.

94.     MICELI and MCCLAIN, SR. told ALBERGO that his stock certificates would be delivered to him immediately after his investment, that the stock would go public immediately after his investment and become listed on the NASDAQ, that approvals for SF-1019 would be achieved imminently from the FDA, that his money would be used for the start-up company operations, and that IMMUNOSYN would have the exclusive right to sell SF-1019.

95.     At the direction of, and based on representations by, MICELI and MCCLAIN, SR., Dr. Brenner told IRWIN that his stock certificates would be delivered to him immediately after his investment, that the stock would go public immediately after his investment and become listed on the NASDAQ, that approvals for SF-1019 would be achieved imminently from the FDA, and that IMMUNOSYN would have the exclusive right to sell SF-1019.

96.     Based upon the promises set forth in paragraphs 94 and 95, and the representations set forth *supra*, PLAINTIFFS agreed to pay for stock in a company now known as IMMUNOSYN and MICELI, MCCLAIN, SR. and ARGYLL EQUITIES agreed to deliver stock to them in the new company.

97.     MICELI, MCCLAIN, SR. and ARGYLL EQUITIES breached the promises made to PLAINTIFFS by failing to send them their stock certificates immediately after their

13

COMPLAINT

1  investment, by failing to take the company public immediately after their investment, by failing

2  to achieve NASDAQ listing, by failing to obtain approvals from the FDA, by failing to use

3  ALBERGO's money for IMMUNOSYN's operations, and by failing to maintain

4  IMMUNOSYN's exclusive right to sell SF-1019.

5      98.    MICELI and MCCLAIN, SR. induced PLAINTIFFS to sign the Purchase

6  Agreement based upon continuing misrepresentations, including but not limited to, the

7  representations that the stock would open at $15.50/per share and that the stock had been

8  approved for sale in Canada and that an order for 130,000 vials per month at $200/vial had been

9  placed.

10      99.    PLAINTIFFS have been harmed by MICELI, MCCLAIN. SR. and ARGYLL

11  EQUITIES breaching their promises and making false statements to induce PLAINTIFFS to

12  enter into a stock purchase agreement.

13      100.    PLAINTIFFS are entitled to damages in amount to be proven at trial against

14  MICELI, MCCLAIN, SR., and ARGYLL EQUITIES, LLC. for their breaches, plus interest,

15  costs and attorneys fees.

16                   **COUNT IV – VIOLATION OF RICO**

17              **(Against MICELI, MCCLAIN, SR. and MCCLAIN, JR.)**

18      101.    PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-

19  100 as if fully stated herein.

20      102.    Approximately ten years ago, MICELI was convicted of felony money

21  laundering, perjury and theft in the State of Illinois.

22      103.    MCCLAIN, SR., MCCLAIN and MICELI worked together at International Profit

23  Associates ("IPA") in Illinois.

24      104.    Through IPA, MCCLAIN SR. became involved with a public entity known as

25  Nextpath Technologies.  MCCLAIN SR. was able to obtain and sell a large volume of shares of

26  Nextpath Technologies to unsuspecting investors, based on false information concerning the

27  company, for approximately $6,000,000.

28

JANIS LAW GROUP, APC    COMPLAINT

105.   MCCLAIN SR. received funds and/or distributed Nextpath Technologies stock certificates through the US mail or other carriers interstate.

106.   MCCLAIN SR. communicated with prospective investors over the telephone from outside of Massachusetts, to convince and deceive them into purchasing Nextpath Technologies stock.

107.   Salvatore and Frank Bramante were investors duped by MCCLAIN SR. to buy Nextpath Technologies stock based upon false and misleading information. The Bramantes sued MCCLAIN, SR. in United States District Court for the District of Massachusetts and obtained judgment against him for about $4,500,000.

108.   After MCCLAIN, SR.'s involvement with Nextpath Technologies, MCCLAIN, SR., MCCLAIN and MICELI left IPA and worked together in an entity called FIT Management.

109.   Money from the sale of Nexthpath Technologies stock was used to finance the start of FIT Management. FIT Management financed the start of ARGYLL EQUITIES.

110.   As a result of numerous civil judgments against FIT Management and/or MCCLAIN, SR., MCCLAIN, SR. did not publically own ARGYLL EQUITIES, but instead operated for the company as a consultant and secret owner.

111.   ARGYLL EQUITIES had the appearance of a legitimate financial/stock lender, but operated more akin to a Ponzi scheme, as described in a lawsuit brought by Gerald W. Schlief, Southern District of Texas, Houston Division, C.A. No. 08-cv-2128. The Gerald W. Schlief lawsuit alleges that MICELI, MCCLAIN SR. and others violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and committed numerous racketeering activities. The Complaint filed by Gerald W. Schlief is incorporated herein by reference.

112.   ARGYLL EQUITIES was used to defraud several investors and/or companies, including but not limited to Gerald W. Schlief, Siko Venture Limited, Louis D. Paolino, Jr., and Servicios Directivos Servia, S.A. de C.V.  Each of these persons/entities brought civil lawsuits against ARGYLL EQUITIES.

\ \ \

15

1       113.    Upon information and belief, numerous unsatisfied civil judgments exist against

2  ARGYLL EQUITIES, FIT Management, and MCCLAIN, SR. for fraud, the Ponzi scheme

3  described in the Gerald Schlief Complaint, securities fraud and/or stock lending fraud.

4       114.    Similar to MCCLAIN, SR.'s false and misleading promotion and sale of Nextpath

5  Technologies stock, the DEFENDANTS are engaged in the false and misleading promotion of

6  IMMUNOSYN stock, for financial gain, to the detriment of others.

7       115.    The DEFENDANTS have been promoting IMMUNOSYN stock through various

8  mediums so that they may sell their stock at a great profit.

9       116.    Upon information and belief, the DEFENDANTS, personally or through entities

10  that they control, have sold IMMUNOSYN stock from April 2007 through the present totaling

11  more than $14,000,000.

12       117.    The DEFENDANTS are also engaged in a scheme to sell SF-1019 for their own

13  financial gain outside of the exclusive license held by the publically traded company they

14  control, IMMUNOSYN.

15       118.    The DEFENDANTS are distributing SF-1019 and IMMUNOSYN stock

16  certificates interstate through the US mail or other carriers.

17       119.    The DEFENDANTS are using email, websites and telephone communications to

18  sell SF-1019 interstate.

19       120.    MICELI, MCCLAIN, SR. and MCCLAIN, JR., operate as an enterprise through

20  various entities as described *supra* and through their association and agreement to make money.

21       121.    MICELI, MCCLAIN, SR. and MCCLAIN, JR., have engaged in a pattern of

22  racketeering activity, to the detriment of others, including ALBERGO and IRWIN.

23       122.    MICELI, MCCLAIN, SR. and MCCLAIN, JR., have engaged in monetary

24  transactions (including but not limited to the creation of IMMUNOSYN and ARGYLL

25  BIOTECH) with money derived from unlawful activities and/or racketeering activity in prior

26  enterprises.

27  \ \ \

28

16

123. As a result of the unlawful conduct and RICO violations committed by MICELI, MCCLAIN, SR. and MCCLAIN, JR., ALBERGO and IRWIN have been damaged.

124. As a result of the unlawful conduct and RICO violations committed by MICELI, MCCLAIN, SR. and MCCLAIN, JR., ALBERGO and IRWIN are entitled to compensatory damages in an amount to be proven at trial, treble damages, interest, costs and attorneys fees.

## COUNT V – CONSPIRACY TO VIOLATE RICO

### (Against MICELI, MCCLAIN, SR. and MCCLAIN, JR.)

125. PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-124 as if fully stated herein.

126. RICO prohibits any person from conspiring to violate RICO.

127. MICELI, MCCLAIN, SR. and MCCLAIN, JR. had agreements and/or understandings with each other to engage in racketeering activities.

128. MICELI, MCCLAIN, SR. and MCCLAIN, JR. have committed racketeering activities.

129. ALBERGO and IRWIN were harmed by MICELI, MCCLAIN, SR. and MCCLAIN, JR.'s conspiracy to violate RICO and have suffered actual damages.

130. As a result of MICELI, MCCLAIN, SR. and MCCLAIN, JR.'s unlawful conspiracy to commit RICO violations, ALBERGO and IRWIN are entitled to compensatory damages in an amount to be proven at trial, treble damages, interest, costs and attorneys fees.

## COUNT VI – CIVIL CONSPIRACY

### (Against All DEFENDANTS)

131. PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-130 as if fully stated herein.

132. The DEFENDANTS entered into an agreement with each other to commit one or more unlawful acts, including fraud and fraud in the inducement, against ALBERGO and IRWIN.

\ \ \

17

1        133.    Through the DEFENDANTS' conspiracy and fraud, ALBERGO and IRWIN

2  were sold IMMUNOSYN stock based upon numerous misrepresentations.

3        134.    ALBERGO and IRWIN were harmed by the DEFENDANTS' conspiracy and

4  fraud, and as a result thereof have suffered actual damages.

5        135.    As a consequence of the DEFENDANTS' conspiracy and fraud, ALBERGO and

6  IRWIN are entitled to compensatory damages in an amount to be proven at trial, plus interest,

7  costs and attorneys fees.

8        136.    The conduct of DEFENDANTS, as alleged above, was oppressive, fraudulent and

9  malicious and was committed willfully and/or with reckless disregard for the rights of

10  PLAINTIFFS, and without just cause or excuse.  Accordingly, PLAINTIFFS are entitled to

11  exemplary damages in an amount to be determined at trial.

12                **COUNT VII – UNJUST ENRICHMENT**

13                (Against MICELI, MCCLAIN, SR. and ARGYLL EQUITIES)

14        137.    PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-

15  136 as if fully stated herein.

16        138.    MICELI, MCCLAIN, SR. and ARGYLL EQUITIES have been unjustly enriched

17  by the sale of IMMUNYSON stock to ALBERGO and IRWIN to the extent of the profit

18  received from the sale of said stock, and each said DEFENDANT should be required to disgorge

19  that amount.

20        139.    As a consequence, PLAINTIFFS are entitled to compensatory damages in an

21  amount to be proven at trial, plus interest, costs and attorneys fees.

22                **COUNT VIII – FRAUDULENT TRANSFER**

23                (Against THOMAS ROAD COMPANY and DONA MICELI)

24        140.    PLAINTIFFS hereby incorporate and restate herein the foregoing paragraphs 1-

25  139 as if fully stated herein.

26        141.    The THOMAS ROAD COMPANY is the alter ego of MICELI.

27  \ \ \

28
                                              18

COMPLAINT

142.   The THOMAS ROAD COMPANY never performed any work for ARGYLL EQUITIES, yet during 2006 and 2007 it received money from ARGYLL EQUITIES without providing any value in exchange.

143.   ARGYLL EQUITIES is insolvent due to substantial judgments being obtained against it by creditors.

144.   PLAINTIFFS have been damaged by the fraudulent transfer of money from ARGYLL EQUITIES to THOMAS ROAD COMPANY.

145.   DONA MICELI never worked for ARGYLL EQUITIES.

146.   Since 2006, DONA MICELI received over $1,000,000 from ARGYLL EQUITIES.

147.   Assets of ARGYLL EQUITIES have been transferred to DONA MICELI without providing reasonably equivalent value in exchange to ARGYLL EQUITIES and with the intent to hinder and prevent collection by PLAINTIFFS and other creditors.

148.   PLAINTIFFS have been damaged by the fraudulent transfer of money from ARGYLL EQUITIES to DONA MICELI.

149.   PLAINTIFFS did not have knowledge of the fraudulent transfers to the THOMAS ROAD COMPANY and DONA MICELI until their review of this subject complaint, prior to filing, and said transfers were concealed from them by the DEFENDANTS.

150.   PLAINTIFFS did not have knowledge of any judgment against ARGYLL EQUITIES or pending lawsuits against ARGYLL EQUITIES until August of 2009 and said lawsuits and judgments were concealed from them by the DEFENDANTS.

151.   The statute of limitations regarding said fraudulent transfers should be tolled, with respect to PLAINTIFFS.

152.   As a consequence of the fraudulent transfers to THOMAS ROAD COMPANY and DONA MICELI, PLAINTIFFS are entitled to imposition of a constructive trust over all transferred amounts, compensatory damages in an amount to be proven at trial, plus interest, costs and attorneys fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFFS pray for judgment against DEFENDANTS, and each of them, in favor of PLAINTIFFS as follows:

On Counts I, III, and VII:

1. For compensatory damages according to proof;

On Count II:

1. For rescission and restitution as a result of the fraudulent inducement;

2. For compensatory damages according to proof;

3. For punitive damages;

On Count IV and V:

1. For compensatory damages according to proof;

2. For treble damages;

On Count VI:

1. For compensatory damages according to proof;

2. For punitive damages;

On Count VIII:

1. For a constructive trust on all amounts transferred;

2. For compensatory damages according to proof;

On All Counts:

1. For a pre-judgment order of attachment against the real and personal property of JAMES MICELI and/or DONA MICELI that may be found and attached to the extent of $600,000 in the State of California;

2. For prejudgment interest;

3. For costs of suit incurred herein;

4. For reasonable attorneys' fees; and

5. For such other and further relief as the Court deems just and proper.

JANIS LAW GROUP, APC    COMPLAINT

1    Dated:  November 24, 2009

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J A N I S   L A W   G R O U P
A PROFESSIONAL CORPORATION

By: _____
Dean T. Janis
JANIS LAW GROUP, APC
550 West C Street, Suite 2000
San Diego, CA 92101
Tel: (619) 814-3526
Fax: (619) 955-5318
Email: dean.janis@janislaw.net

Counsel for Plaintiffs
ROBERT ALBERGO and DAVID IRWIN

21

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ROBERT ALBERGO, DAVID IRWIN

## DEFENDANTS
IMMUNOSYN CORPORATION, ARGYLL BIOTECHNOLOGIES, LLC, JAMES T. MICELI et al.

**(b)** County of Residence of First Listed Plaintiff   Pinellas County, FLA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Janis Law Group, A.P.C., 550 West C Street, Suite 2000, San Diego, CA 92101, ph: 619.814.3525

Attorneys (If Known)

09 CV 2653 DMS AJB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability |    of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine |    Safety/Health |  | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |    Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury |    & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. |    or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ |    Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations | **PRISONER PETITIONS** |    26 USC 7609 |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 510 Motions to Vacate |  | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - |    Sentence | **IMMIGRATION** |    Under Equal Access |
|  |    Employment |    **Habeas Corpus:** | ☐ 462 Naturalization Application |    to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 530 General | ☐ 463 Habeas Corpus - | ☐ 950 Constitutionality of |
|  |    Other | ☐ 535 Death Penalty |    Alien Detainee |    State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration |  |
|  |  | ☐ 550 Civil Rights |    Actions |  |
|  |  | ☐ 555 Prison Condition |  |  |

(Personal Injury / Medical Malpractice columns)
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Securities Exchange Act of 1934, 15 U.S.C. § 78m, 78r and 78t
Brief description of cause:
securities fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE   11/24/2009
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  7605   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FDB 11/24/09



```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS007605
Cashier ID: mbain
Transaction Date: 11/24/2009
Payer Name: JANIS LAW GROUP
-----------------------------------
CIVIL FILING FEE
 For: ALBERGO V IMMUNOSYN
 Case/Party: D-CAS-3-09-CV-002653-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 1143
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```