**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT ALBERGO, et al., <br><br> Plaintiffs, <br> vs. <br><br> IMMUNOSYN CORPORATION, et al., <br><br> Defendants. | CASE NO. 09CV2653 DMS (AJB) <br><br> **ORDER GRANTING IN PART PLAINTIFFS' SPECIAL MOTION TO STRIKE DEFENDANTS' COUNTERCLAIM** |

Pending before the Court is Plaintiffs' special motion to strike Defendants' Counterclaim. For the following reasons, Plaintiffs' motion is granted in part.

**I.**

**BACKGROUND**

Plaintiffs Robert Albergo and David Irwin allege in early 2006, they were induced to invest a combined $1,025,000 in unrestricted stock of a "start-up" company called Nurovysn Biotech Corporation (now Immunosyn) through Argyll Equities. (First Amended Complaint ("FAC"), ¶¶ 65-68, 72, 76.) Based upon representations made to them by Defendants and their agent, Plaintiffs were induced to enter into what the Parties have called the First Argyll Contracts. (*Id*. at ¶¶ 65, 72.) Under these contracts, executed in March and April 2006, Plaintiff Albergo paid $1,000,000 and Plaintiff Irwin paid $25,000 in exchange for 100,000 and 2,500 free-trading shares of common stock in Immunosyn, respectively. (*Id*. at ¶¶ 65-68, 72, 76.) Neither Plaintiff received the stock. (*Id*. at ¶¶ 128,

137.) Then, on May 7, 2007, Plaintiffs received a letter from Defendant James Miceli requiring them to sign new contracts, the so-called Second Argyll Contracts, in order to receive their original stock certificates. (*Id*. at ¶ 79.) The Second Argyll Contracts contained terms and conditions not present in the First Argyll Contracts. (*Id*. at ¶ 80.) However, according to Plaintiffs, because of the alleged false representations of Defendants, and given the requirement that Plaintiffs sign the Second Argyll Contracts in order to receive the original stock they purchased, both Plaintiffs signed the Second Argyll Contracts. (*Id*. at ¶ 81.)

On November 24, 2009, Plaintiffs filed suit in this Court. (Doc. 1.) They subsequently filed a FAC. (Doc. 18.) In their FAC, Plaintiffs assert eight claims for relief: (1) breach of contract, (2) violation of the Securities Exchange Act, (3) fraud and fraud in the inducement, (4) violation of RICO, (5) conspiracy to violate RICO, (6) civil conspiracy, (7) unjust enrichment, and (8) fraudulent conveyance. On September 22, 2010, Defendants filed an Answer and Counterclaim to Plaintiffs' FAC. (Doc. 38.) The Counterclaim sets forth four claims for relief: (1) breach of contract, (2) fraud, (3) intentional interference with economic advantage, and (4) negligent interference with economic advantage. On October 1, 2010, Plaintiffs filed a special motion to strike Defendants' Counterclaim pursuant to California Code of Civil Procedure § 425.16 ("anti-SLAPP motion"). (Doc. 47.) In opposition to Plaintiffs' anti-SLAPP motion, Defendants contend Plaintiffs signed agreements rescinding the First Argyll Contracts (the "rescission agreements") and subsequently entered into the Second Argyll Contracts. (McClain Decl. ¶¶ 6-7, Exs. G-I.)

## II.

## LEGAL STANDARD

California's anti-SLAPP statute is intended to provide a procedural remedy to dispose of lawsuits that are brought to chill or punish an individual's exercise of his or her constitutional rights. *See Rusheen v. Cohen*, 37 Cal.4th 1048, 1055-56 (2006); Cal. Code Civ. P. § 425.16. The statute provides "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will

1  prevail on the claim." Cal. Code Civ. P. § 425.16(b)(1). An "act in furtherance of a person's right of
2  petition or free speech" includes: "(1) any written or oral statement or writing made before a . . .
3  judicial proceeding . . .; (2) any written or oral statement or writing made in connection with an issue
4  under consideration or review by a . . . judicial body . . .; (3) any written or oral statement or writing
5  made in a place open to the public or a public forum in connection with an issue of public interest; or
6  (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the
7  constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.*
8  at § 425.16(e).

9  "In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant
10 has made a threshold showing that the challenged cause of action arises from protected activity. . . .
11 A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a
12 section 425.16 motion to strike." *Rusheen*, 37 Cal.4th at 1056 (citations and quotations omitted). If
13 the court determines the party bringing the anti-SLAPP motion has made the threshold showing, then
14 it determines whether the opposing party has demonstrated a probability of prevailing on the
15 challenged claim. Cal. Code Civ. P. § 425.16(b)(1). To do so, the party must "demonstrate that the
16 complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to
17 sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Rusheen*, 37
18 Cal.4th at 1056 (citations and quotations omitted). If the movant prevails on a special motion to strike,
19 she or he is "entitled to recover his or her attorney's fees and costs." Cal. Code Civ. P. § 425.16(c)(1).

20                                              **III.**
21                                          **DISCUSSION**

22 Plaintiffs argue the Counterclaim is based upon factual allegations of conduct that is protected
23 under the anti-SLAPP statute, including that Plaintiffs seek to enforce the Argyll Contracts through
24 their Complaint, have made false claims through their Complaint, and have interfered with
25 Defendants' attempt to sell shares by seeking relief through this Court. Defendants contend the
26 gravamen of their Counterclaim is that Plaintiffs signed the agreements rescinding the First Argyll
27 Contracts and subsequently breached the contractual agreements contained in the rescission
28 agreements to release and hold harmless all Defendants for claims arising out of the First Argyll

Contracts. They claim, because of the rescission agreements, the Second Argyll Contracts are in fact the operative documents and Defendants committed fraud in entering into those contracts. Defendants further contend Plaintiffs have intentionally and negligently interfered with Defendants' economic advantage through their actions. The Court addresses each of Defendants' counterclaims in turn.

### A.     Breach of Contract

Defendants do not dispute the anti-SLAPP statute is triggered by their counterclaim for breach of contract. Rather, they argue they have made the requisite *prima facie* showing of probability of prevailing on this counterclaim. Defendants point to the indemnification provision in the rescission agreements and claim, by attempting to prosecute claims under the First Argyll Contracts, Plaintiffs have breached the rescission agreements. The elements of a breach of contract claim are (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) breach by the defendant, and (4) damages resulting from the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Defendants claim they have submitted factual evidence supporting each of these elements.

The Court finds Defendants have not sufficiently established a probability of prevailing on the merits of their breach of contract claim to survive Plaintiffs' anti-SLAPP motion. Although Defendants allege the existence of each of the necessary elements of a breach of contract claim, they do not submit adequate proof of each element. As an initial matter, Defendants have failed to allege a cognizable basis for damages in the form of attorneys' fees because the rescission agreements do not contain an attorneys' fees clause. *See Navellier v. Sletten*, 106 Cal. App. 4th 763, 776-77 (2003)(dismissing breach of contract claim under anti-SLAPP statute in part based on "the prevailing rule that such fees and costs are not recoverable in an action for breach of a release unless the agreement or a statute specifically provides for them"). In the McClain declaration submitted by Defendants, Defendant McClain, Jr. states, as a result of Plaintiffs' assertion of claims allegedly released in the rescission agreements, Defendants "have been forced to dedicate time, effort and resources, including retaining and paying lawyers, to refute [Plaintiffs'] claims, to defend this lawsuit, and to marshal the documentary evidence necessary to disprove these claims. But for these claims, Defendants could have used the time and resources on other, productive and profitable ventures." (McClain Decl. ¶ 8.) Accordingly, Defendants' major items of damages are attorneys' fees and costs

of litigation. However, the rescission agreements do not contain an attorneys' fees provision and Defendants have not provided evidence that they are otherwise entitled to such damages.

Defendants further state in their opposition that they "performed all obligations under the [rescission agreements], including releasing all claims against plaintiffs." (Immunosyn Opp. at 4.) However, the rescission agreements themselves provide that Plaintiffs were entitled to the immediate return of all consideration made pursuant to the First Argyll Contracts, "including, without limitation, the return by Argyll Equities to the Purchaser of the Purchase Funds." (McClain Decl. Ex. G at § 1; *Id.* at Exs. H-I.) It is undisputed that Defendants never returned the funds paid by Plaintiffs in connection with the First Argyll Contracts. Rather, apparently as evidence of excuse for nonperformance, Defendant McClain, Jr. states in his declaration that, pursuant to the directions of Plaintiffs, Argyll Equities continued to hold the funds paid by Plaintiffs after the rescission agreements were entered into in anticipation of a new transaction. (*Id.* at ¶¶ 9-10.) However, to demonstrate a probability of prevailing on the merits, Defendants' showing of facts must consist of evidence that would be admissible at trial. *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1346 (2007); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 80 (2007). In opposing an anti-SLAPP motion, "declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007). Here, McClain, Jr.'s representation lacks foundation and fails to indicate his basis for making such a representation. Both Plaintiffs declare they never spoke with Defendant McClain, Jr. regarding the rescission agreements nor gave such a direction. (Irwin Decl. ¶¶ 4-5; Albergo Decl. ¶¶ 6-7.) Regardless, Defendants provide no evidence that any such direction was in writing, as would be necessary under the terms of the rescission agreements to excuse Defendants' performance of their contractual obligation to return the purchase funds. (McClain Decl. Ex. G at § 5 ("This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof, supersedes all existing agreements among them concerning such subject matter, and may be modified only by a written instrument duly executed by each party with the approval of the Board of Directors or by an officer of each corporate party."); *Id.* at Exs. H-I.) Accordingly, Defendants have failed to make a *prima facie* showing of probability of prevailing on their

counterclaim for breach of the rescission agreements.

**B.     Fraud**

As an initial matter, it is unclear from the face of Defendants' Counterclaim what activity gives rise to their counterclaim for fraud. Defendants assert Plaintiffs "have made false representations of material facts as described" in the Counterclaim. (Counterclaim ¶ 28.) The only "false claims" mentioned in the Counterclaim include those made "to support [Plaintiffs'] efforts to enforce the agreement to purchase Nurovysn stock including, but not limited to, the following: [Plaintiffs] omitted any mention of the Rescission Agreements they signed, [Plaintiffs'] false claim that there was no consideration for the Immunosyn Agreements; [Plaintiffs'] false claim that they were induced to enter into the Immunosyn Agreements by representations made in early 2006; [Plaintiffs'] false claim that [Defendants] are selling the drug SF-1019 illegally; and [Plaintiffs'] false claim that SEC filings of Immunosyn contain untrue statement[s] of fact." (*Id.* at ¶ 18.) Defendants further allege Plaintiffs are interfering with their efforts to sell shares of Immunosyn to third parties by making false claims (*id.* at ¶ 19), and have "repeated their false claims in an effort to induce the other investors to file lawsuits against" Defendants (*id.* at ¶ 20). As Plaintiffs have demonstrated, it is clear that these allegations concern activities protected under the anti-SLAPP statute, and Defendants have not offered evidence establishing their probability of prevailing on their fraud counterclaim based upon these allegations. Rather, in their opposition, Defendants assert their counterclaim for fraud is based upon Plaintiffs' representations in entering into the Second Argyll Contracts–namely, their representations they had conducted their own due diligence and they understood they were purchasing restricted shares. Although Defendants mention several of the representations contained in the Second Argyll Contracts in their Counterclaim (*see* Counterclaim ¶ 13), they in no way allege how these representations were false, how Defendants relied upon them, or how such representations have caused Defendants damages. However, even assuming Defendants' fraud counterclaim is in fact based upon the representations contained in the Second Argyll Contracts, as Defendants assert in their opposition, the Court finds such counterclaim is nonetheless subject to the anti-SLAPP statute.

Defendants state in their opposition that one element of their fraud counterclaim–that relating to Plaintiffs' alleged false representation in the Second Argyll Contracts agreeing to indemnify

1  Defendants for any claims or losses incurred by reason of the breach of the representations and
2  warranties in such contracts–triggers the anti-SLAPP statute.[1] The Court agrees. Although Defendants
3  contest that the remaining elements of their fraud counterclaim are subject to the anti-SLAPP statute,
4  a mixed cause of action is subject to the statute unless the allegations of protected conduct are merely
5  incidental to allegations of the unprotected activity. *See Bulletin Displays, LLC v. Regency Outdoor*
6  *Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006)("Anti-SLAPP Motions challenge particular
7  causes of action, rather than individual allegations or theories supporting a cause of action.");
8  *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672
9  (2005). As Defendants' allegations regarding Plaintiffs' alleged false representation to indemnify and
10 hold harmless Defendants are not merely incidental to their other allegations, Defendants' entire
11 counterclaim for fraud is subject to the anti-SLAPP statute.

12     The Court therefore looks to whether Defendants have established a probability of prevailing
13 on their fraud counterclaim. The elements of a fraud cause of action are a knowingly false statement
14 of fact intended to trigger reliance on the statement, justifiable reliance, and resulting damages. *Small*
15 *v. Fritz Cos.*, 30 Cal.4th 167, 173 (2003). Defendants argue in their opposition that Plaintiffs made
16 false statements by entering into the Second Argyll Contracts with the intent that Defendants would
17 rely on those statements and agree to enter into the purchase transactions, Defendants justifiably relied
18 on Plaintiffs' statements, and Defendants have suffered resulting damages. However, the only
19 evidence Defendants provide to prove the representations made by Plaintiffs were false is the statement
20 in the McClain declaration that "Albergo and Irwin have asserted claims in the present action which,
21 if true, would necessarily mean the representations and warranties they made in the [Second Argyll
22 Contracts] are false." (McClain Decl. ¶ 15.) Because the claims made by Plaintiffs in their FAC are
23 privileged for purposes of Defendants' fraud counterclaim, the claim cannot survive.

24     California Civil Code § 47 provides "[a] privileged publication or broadcast is one made:. . .

---

[1] Defendants' Counterclaim states "[p]ursuant to the Agreements, [Plaintiffs] must indemnify and hold harmless [Defendants] from any and all claims relating to [Plaintiffs'] purchase of Immunosyn stock, including, but not limited to, the claims made by [Plaintiffs] in their lawsuit." (Counterclaim ¶ 25.) Although Defendants do not allege in their Counterclaim that this was a false representation of material fact upon which Defendants relied, thereby causing Defendants damages, the Court assumes for purposes of this analysis that Defendants' fraud counterclaim is based upon this representation in the Second Argyll Contracts, as Defendants assert in their opposition.

(b) . . . in any . . . judicial proceeding . . . ." The privilege bars all tort causes of action, other than malicious prosecution. *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). It "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. . . . The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen*, 37 Cal.4th at 1057 (quoting *Silberg*, 50 Cal.3d at 212). Here, the claims asserted by Plaintiffs in the FAC, which Defendants claim indicate Plaintiffs knowingly made false statements of fact in entering into the Second Argyll Contracts, constitute a communicative act privileged under California's litigation privilege. "While it is true that the alleged fraud occurred before the [FAC was] filed, it is also true that damages from the fraud were caused by the [FAC's] assertion. Thus, . . . '[Plaintiffs are] being sued because of the [claims they] filed in federal court. In fact, but for the federal lawsuit . . ., [Defendants'] present claims would have no basis.'" *Navellier*, 106 Cal. App. 4th at 772 (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 90 (2002)). Since Defendants' fraud counterclaim is based, at least in part, on Plaintiffs' privileged claims asserted in the instant action, Defendants cannot prevail on this claim and Plaintiffs' anti-SLAPP motion is granted as to it.

**C.     Interference Claims**

Defendants' final two counterclaims are for negligent and intentional interference with economic advantage. They argue these counterclaims do not trigger the anti-SLAPP statute because they are "not based on the statements made in the present suit. The conduct which Defendants complain about is Plaintiffs' out-of[-]court statements to parties not involved in the present suit." (Immunosyn Opp. at 8.) However, Defendants' claims are belied by the language of their Counterclaim, which clearly alleges conduct based on Plaintiffs' instant lawsuit. In their Counterclaim, Defendants allege:

> On information and belief, [Plaintiffs] are aware that [Defendants] are in negotiations to sell shares of Immunosyn to third party investors and have in fact sold shares to other investors. [Plaintiffs] are interfering with those efforts by seeking to enforce their rescinded agreements to purchase Nurovysn stock and be [sic] making the false claims contained . . . above. [Plaintiffs] have wrongfully made their claims with the knowledge that Immunosyn would be forced by SEC rules to publically [sic] disclose

the contents of the Complaint, regardless of the false nature of the claims. (Counterclaim ¶ 19.) Defendants further allege, "[Plaintiffs] are further aware that other holders of Immunosyn stock may be induced to sell their stock or file lawsuits based on [Plaintiffs'] false claims." (*Id.* at ¶ 32.) As mentioned above, the only false claims mentioned in the Counterclaim include those made "to support [Plaintiffs'] efforts to enforce the agreement to purchase Nurovysn stock including, but not limited to, the following: [Plaintiffs] omitted any mention of the Rescission Agreements they signed, [Plaintiffs'] false claim that there was no consideration for the Immunosyn Agreements; [Plaintiffs'] false claim that they were induced to enter into the Immunosyn Agreements by representations made in early 2006; [Plaintiffs'] false claim that [Defendants] are selling the drug SF-1019 illegally; and [Plaintiffs'] false claim that SEC filings of Immunosyn contain untrue statement[s] of fact." (*Id.* at ¶ 18.) In support of their counterclaim for negligent interference with economic advantage, Defendants allege "[Plaintiffs] owe a duty of care to [Defendants] due to a special relationship that exists because [Plaintiffs'] conduct in failing to honor the Agreements could not be done without a direct impact on [Defendants'] business." (*Id.* at ¶ 38.) As Plaintiffs have demonstrated, these allegations concern the filing of Plaintiffs' FAC, which constitutes protected activity under the anti-SLAPP statute for the reasons discussed above. Defendants do also allege "[o]n information and belief, [Plaintiffs] and/or their representatives, have actually contacted other investors in Immunosyn and repeated their false claims in an effort to interfere with [Defendants'] business," (*id.* at ¶ 33), and focus their opposition on this allegation. However, even assuming such allegation itself does not trigger the anti-SLAPP statute, it is not merely incidental to Defendants' allegations concerning the filing of Plaintiffs' FAC and the anti-SLAPP statute therefore applies to both interference counterclaims in their entirety. *Bulletin Displays*, 448 F. Supp. 2d at 1180; *Peregrine Funding*, 133 Cal. App. 4th at 672.

Defendants do not attempt to establish a probability of prevailing on the merits of their interference counterclaims and instead request an opportunity to conduct discovery on the issue, as they claim such evidence is in the exclusive possession of Plaintiffs. Plaintiffs oppose Defendants' request for discovery as being inadequate to justify relief from the automatic discovery stay imposed under the anti-SLAPP statute. *See* Cal. Code Civ. P. § 425.16(g)("All discovery proceedings in the

action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."). Several federal courts have noted that a conflict exists between the anti-SLAPP statute's discovery provision and Federal Rule of Civil Procedure 56(d).[2] *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 980-81 (C.D. Cal. 1999). The Court agrees and therefore applies Rule 56 here. *Metabolife*, 264 F.3d at 846; *Rogers*, 57 F. Supp. 2d at 980-81.

Rule 56(d) states "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." However, "[a]lthough Rule 56(f) [now 56(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife*, 264 F.3d at 846 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Here, Defendants have not had opportunity to discover information essential to their opposition to Plaintiffs' anti-SLAPP motion to strike Defendants' counterclaims for negligent and intentional interference with economic advantage. Accordingly, Defendants shall be permitted to take such limited discovery necessary to prove their interference counterclaims. Any such discovery shall be completed within 60 days of the issuance of this order. Within two weeks after the completion of such discovery, Defendants shall file a supplemental opposition to Plaintiffs' anti-SLAPP motion, addressing the motion only as it pertains to the counterclaims for negligent and intentional interference with economic advantage. Plaintiffs shall file a supplemental reply to Defendants' supplemental opposition within two weeks after the opposition is filed. The matter shall

---

[2] Federal Rule of Civil Procedure 56(d) was formerly Rule 56(f). However, as the Advisory Committee Notes to the 2010 Amendments to Rule 56 note, "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f). A party who seeks relief under subdivision (d) may seek an order deferring the time to respond to the summary-judgment motion."

then be taken under submission by the Court. The Court defers ruling on Plaintiffs' anti-SLAPP motion as to Defendants' interference counterclaims until such time as the limited discovery and supplemental briefing is completed.

**D.     Attorneys' Fees**

Plaintiffs have partially prevailed on their anti-SLAPP motion and are therefore entitled to attorneys' fees under California Code of Civil Procedure § 425.16(c)(1), which states "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." *See also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109-10 (9th Cir. 2003)(confirming anti-SLAPP motions may be brought in federal court to strike state law claims and a prevailing party is entitled to attorneys' fees and costs).  However, in light of the Court's deferred ruling on Plaintiff's anti-SLAPP motion as to Defendants' interference counterclaims, Plaintiffs shall defer filing any motion for attorneys' fees in connection with their anti-SLAPP motion until such time as the Court has issued an Order with respect to those counterclaims.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiffs' special motion to strike Defendants' Counterclaim is granted in part.

**IT IS SO ORDERED.**

DATED: January 19, 2011

_____
HON. DANA M. SABRAW
United States District Judge