## AGREEMENT FOR THE PURCHASE OF
## COMMON STOCK

THIS AGREEMENT FOR THE PURCHASE OF COMMON STOCK (the "Agreement") is made and entered into as of this _13_ day of March, 2006, by those individuals and entities listed on Exhibit A to this Agreement ("Purchasers"), and Argyll Equities, LLC, a Texas limited liability company ("Argyll Equities").

## RECITALS

WHEREAS, Nurovysn Merger Corporation is currently a privately-held Nevada corporation that has announced plans to merge with and into a publicly-traded entity. After such merger, the merged entity shall change its name to "Nurovysn Biotech Corporation" (hereinafter "Nurovysn Biotech"). It is anticipated that a portion of the equity shares of Nurovysn will thereafter be publicly-traded on the over-the-counter bulletin board market system; and

WHEREAS, it is anticipated that, following the merger, Argyll Equities will hold a portion of common stock representing an equity position in Nurovysn Biotech, which equity position shall, within a short period of time thereafter, comprise free-trading shares of Nurovysn Biotech; and

WHEREAS, Argyll Equities desires to sell, and Purchasers desire to Purchase from Argyll Equities, a number of shares of common stock.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, covenants and representations contained in this Agreement, Purchasers and Argyll Equities hereby agree as follows:

1. **Agreement to Purchase and Sell.**

    1.1  Argyll Equities shall sell to the Purchasers and the Purchasers shall purchase from Argyll Equities (i) _twenty thousand_ (20,000) free-trading shares of common stock in Nurovysn Biotech Corporation (the "Purchased Stock"). The total price for the Purchased Stock shall be _two hundred thousand_ dollars ($200,000.00) (the "Purchase Funds"), which amount shall be paid by wire transfer or other immediately-available funds to Argyll Equities within _____ business days following execution of this Agreement.

    1.2  Argyll Equities shall sell, transfer and assign _twenty thousand_ (20,000.) shares of the Purchased Stock to the Purchasers within sixty (45) days after Argyll Equities' receipt of the Purchase Funds.

2. **Representation and Warranties of Argyll Equities.**

Argyll Equities hereby represents and warrants to the Purchasers that the statements in the following paragraphs of this Section 2 are all true and complete as of the date of this Agreement:

2.1   This Agreement has been duly and validly executed and delivered by Argyll Equities, and upon execution and delivery by the Purchasers of this Agreement and the performance by the Purchasers of their respective obligations, it will constitute a legal, valid and binding obligation of Argyll Equities enforceable against Argyll Equities in accordance with its terms, except as such enforcement may be limited by bankruptcy or insolvency laws or other laws affecting enforcement of creditors' rights or by general principles of equity.

2.2   Argyll Equities is or shall be the record and beneficial owner of the Purchased Stock and has or shall have sole managerial and dispositive authority with respect to the Purchased Stock. Argyll Equities has not granted and will not grant any person a proxy with respect to the Purchased Stock that has not expired or will not expire, or that otherwise has been or will be withdrawn. The sale and delivery of the Purchased Stock to the Purchasers pursuant to this Agreement will vest in the Purchasers legal and valid title to the Purchased Stock, free and clear of all liens, security interests, adverse claims or other encumbrances of any character whatsoever (collectively, "Encumbrances") (other than Encumbrances created by the Purchasers).

3.   **Representations and Warranties of Purchasers**.

Purchasers hereby individually and jointly represent and warrant to Argyll Equities that the statements made in this Section 3 are all true and complete as of the date of this Agreement. Each Purchaser individually represents that he, she, or it has the full power and authority to enter into this Agreement. This Agreement has been duly and validly executed and delivered by the Purchasers, and upon the execution and delivery by Argyll Equities the performance by Argyll Equities of its obligations herein, this Agreement will constitute a legal, valid, and binding obligation of the Purchasers enforceable against the Purchasers in accordance with its terms, except as such enforcement may be limited by bankruptcy or insolvency laws or other laws affecting enforcement of creditors' rights or by general principles of equity.

4.   **MISCELLANEOUS**.
4.1   This Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the Purchasers and Argyll Equities.

4.2   Any dispute, disagreement, conflict of interpretation or claim arising out of this Agreement, or its enforcement, shall be governed by the laws of the State of California, excluding its conflicts of laws provisions.

4.3     This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same Agreement. Facsimile signatures shall be deemed to be originals.

4.4     From and after the date of this Agreement, upon the reasonable request of a party hereto, the other parties shall execute and deliver such instruments, documents, or other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purpose of this Agreement.

IN WITNESS WHEREOF, the Purchasers, Sellers, Argyll equities, and Nurovysn have executed this Agreement as of the date first written above.

PURCHASERS:

_____
ARGYLL EQUITIES, LLC

_____
Jim Miceli

## EXHIBIT A

### SCHEDULE OF PURCHASERS

Robert Albergo          20,000 shares
4132 Woodland Pkwy
Palm Harbor, FL 34685

# AGREEMENT FOR THE PURCHASE OF COMMON STOCK

THIS AGREEMENT FOR THE PURCHASE OF COMMON STOCK (the "Agreement") is made and entered into as of this 13th day of March, 2006, by those individuals and entities listed on Exhibit A to this Agreement ("Purchasers"), and Argyll Equities, LLC, a Texas limited liability company ("Argyll Equities").

## RECITALS

WHEREAS, Nurovysn Merger Corporation is currently a privately-held Nevada corporation that has announced plans to merge with and into a publicly-traded entity. After such merger, the merged entity shall change its name to "Nurovysn Biotech Corporation" (hereinafter "Nurovysn Biotech"). It is anticipated that a portion of the equity shares of Nurovysn will thereafter be publicly-traded on the over-the-counter bulletin board market system; and

WHEREAS, it is anticipated that, following the merger, Argyll Equities will hold a portion of common stock representing an equity position in Nurovysn Biotech, which equity position shall, within a short period of time thereafter, comprise free-trading shares of Nurovysn Biotech; and

WHEREAS, Argyll Equities desires to sell, and Purchasers desire to Purchase from Argyll Equities, a number of shares of common stock.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, covenants and representations contained in this Agreement, Purchasers and Argyll Equities hereby agree as follows:

1. **Agreement to Purchase and Sell.**

   1.1 Argyll Equities shall sell to the Purchasers and the Purchasers shall purchase from Argyll Equities (i) Forty Thousand (40,000) free-trading shares of common stock in Nurovysn Biotech Corporation (the "Purchased Stock"). The total price for the Purchased Stock shall be Four Hundred Thousand dollars ($ 400,000.00) (the "Purchase Funds"), which amount shall be paid by wire transfer or other immediately-available funds to Argyll Equities within _____ business days following execution of this Agreement.

   1.2 Argyll Equities shall sell, transfer and assign Forty Thousand ( 40,000 ) shares of the Purchased Stock to the Purchasers within sixty (45) days after Argyll Equities' receipt of the Purchase Funds.

2. **Representation and Warranties of Argyll Equities.**

Argyll Equities hereby represents and warrants to the Purchasers that the statements in the following paragraphs of this Section 2 are all true and complete as of the date of this Agreement:

2.1     This Agreement has been duly and validly executed and delivered by Argyll Equities, and upon execution and delivery by the Purchasers of this Agreement and the performance by the Purchasers of their respective obligations, it will constitute a legal, valid and binding obligation of Argyll Equities enforceable against Argyll Equities in accordance with its terms, except as such enforcement may be limited by bankruptcy or insolvency laws or other laws affecting enforcement of creditors' rights or by general principles of equity.

2.2     Argyll Equities is or shall be the record and beneficial owner of the Purchased Stock and has or shall have sole managerial and dispositive authority with respect to the Purchased Stock. Argyll Equities has not granted and will not grant any person a proxy with respect to the Purchased Stock that has not expired or will not expire, or that otherwise has been or will be withdrawn. The sale and delivery of the Purchased Stock to the Purchasers pursuant to this Agreement will vest in the Purchasers legal and valid title to the Purchased Stock, free and clear of all liens, security interests, adverse claims or other encumbrances of any character whatsoever (collectively, "Encumbrances") (other than Encumbrances created by the Purchasers).

3.      **Representations and Warranties of Purchasers**.

Purchasers hereby individually and jointly represent and warrant to Argyll Equities that the statements made in this Section 3 are all true and complete as of the date of this Agreement. Each Purchaser individually represents that he, she, or it has the full power and authority to enter into this Agreement. This Agreement has been duly and validly executed and delivered by the Purchasers, and upon the execution and delivery by Argyll Equities the performance by Argyll Equities of its obligations herein, this Agreement will constitute a legal, valid, and binding obligation of the Purchasers enforceable against the Purchasers in accordance with its terms, except as such enforcement may be limited by bankruptcy or insolvency laws or other laws affecting enforcement of creditors' rights or by general principles of equity.

4.      **MISCELLANEOUS**.
4.1     This Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the Purchasers and Argyll Equities.

4.2     Any dispute, disagreement, conflict of interpretation or claim arising out of this Agreement, or its enforcement, shall be governed by the laws of the State of California, excluding its conflicts of laws provisions.

4.3     This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same Agreement. Facsimile signatures shall be deemed to be originals.

4.4     From and after the date of this Agreement, upon the reasonable request of a party hereto, the other parties shall execute and deliver such instruments, documents, or other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purpose of this Agreement.

IN WITNESS WHEREOF, the Purchasers, Sellers, Argyll equities, and Nurovysn have executed this Agreement as of the date first written above.

PURCHASERS:

_____
ARGYLL EQUITIES, LLC

_____
Jim Miceli

## EXHIBIT A

### SCHEDULE OF PURCHASERS

Robert Albergo                              40,000 shares
4132 Woodlands Pkwy
Palm Harbor, FL 34685